260 S.E.2d 462 (1979)
Linda NEWCOME et al., etc.
v.
The BOARD OF EDUCATION OF TUCKER COUNTY et al.
No. 14498.
Supreme Court of Appeals of West Virginia.
December 4, 1979.
Fowler, Paterno & Lane, Charlotte R. Lane, Charleston, for plaintiffs-in-error.
Jackson, Kelly, Hool & O'Farrell, Thomas E. Potter and Julian D. Bobbitt, Jr., Charleston, for defendants-in-error.
NEELY, Justice:
This case presents a problem in statutory interpretation, namely the circumstances under which a county board of education is required to provide supplements for teachers' salaries under W.Va.Code, 18A-4-5 [1969]. The statutory provision in question states that a supplement may not be canceled by a school board "unless [it is] forced to do so by failure of a special levy, or a loss in assessed values, or state aid, or events over which it has no control," W.Va.Code, 18A-4-5 [1969]. The appellants, Linda Newcome and Emogene Andrick, filed a petition in mandamus in the Circuit Court of Tucker County, alleging that The Board of Education of Tucker County and Don Carr, Superintendent of Schools for Tucker County, unlawfully failed to include in the budget for the school year 1976-1977 a local supplement of $500 to the State minimum salary for teachers. The appellees, The Board of Education of Tucker County, asserted that they were not required to pay the supplement because inflation, an event beyond their control, made it impossible for *463 them to meet all their educational obligations. The trial judge agreed and ruled for appellees on all the issues, and found that respondents had acted lawfully and properly, "in light of events over which this county school board had no control." We affirm.
Under the statutory scheme created by the Legislature, county boards of education have been given the duty of providing education to the county residents. The breadth of these statutory provisions reveals the extent to which local boards are confronted with conflicting demands upon limited resources. The preeminent restraint upon a local body is that it should not spend money "[i]n excess of the funds available for current expenses." W.Va.Code, 11-8-26 [1963].

I
The financial history of the Tucker County School Board, and its tax base compels us to our conclusion in this case. According to Aaron Rapking, Jr., witness for the appellants and an employee of the West Virginia Department of Education, the annual financial reports for school years 1971-72 through 1974-75 reveal a decline from a surplus balance of $263,791.79 in 1971-72 to a deficit of $77,280.00 in the school year 1974-75. The fiscal year 1975-76 showed a bare surplus of $2,132.47. Tucker County, which ranks 55th out of 55 counties, in the dollars per student ratio for all the counties in the State, had budgeted before the year in question a $500 annual supplement to the teachers' salaries, which totaled $55,500, out of a budget of over 2 million dollars. Tucker County had received no support from a special levy, and as of the date of trial only four counties were paying local supplements without support of special levy funds. The amounts in these other counties ranged from $100 to $350.
In the fiscal year 1976-77, when the supplements were canceled, the Board of Education appropriated no money for capital expenditures, and made the following cuts: Administration costs went from $76,532 to $59,390; maintenance from $72,200 to $23,250; teaching supplies from $22,050 to $15,770; and, textbooks from $12,000 to $7,000. This attempt to save money was offset by an increase in the minimum teachers' salary and a $65,000 increase in transportation costs; consequently the final budget for 1976-77 was within $2,000 of the previous year's which had included a supplement for the teachers. Aaron Rapking and Don Carr, the Tucker County Superintendent, testified that even with a zero capital outlay and a two-thirds cut in maintenance, the only way to budget for the supplement would be to reduce the teaching staff.
Not all of the witnesses agreed with Mr. Rapking's analysis that some teachers would need to be fired before a supplement could be granted. Nancy Slater, an employee of the West Virginia Education Association, testified that the budget for the fiscal year 1976-77 had hidden surplus money. Mr. Rapking testified, however, that, "I have considerable experience in this field; I was fiscal officer of our largest school system for fifteen years; I knew where I would hide money; I can't find any hidden here." Upon cross-examination, Mr. Rapking suggested that the "hidden surplus" referred to by Mrs. Slater was encumbered funding reserved to pay teachers since Tucker County elected to pay its teachers in 12 monthly installments rather than the 10 installments originally planned. Appellants stated at oral argument that they were presenting a legal argument and were not contesting the factual findings of the trial court; consequently, we need not pass on the accuracy of the trial court's findings of fact and may confine ourselves to the simple issue of whether the Board of Education of Tucker County had the statutory authorization to cancel supplements to teachers' salaries.

II
The statute, W.Va.Code, 18A-4-5 [1969] states that the supplement must be paid unless there is a failure of a special levy, a loss in assessed values, a loss in State aid or events over which the county board has no control. Since there was no failure of a *464 special levy, since assessed values have increased each school year, and since for the fiscal years 1974-75 through 1976-77 there was an annual increase in State aid, the only inquiry is whether there were significant events over which the school board had no control.
"Events over which it has no control" is indeed a nebulous phrase which has received little attention in the case law. Appellants contend that it applies only to "acts of God," although they point to no authority for this assertion. In reality, it seems that this clause was included to allow for any unforeseeable event which may destroy a rational budget. In 1969, the year this statute was enacted, inflation might not have been perceived as a budget destroying event out of the control of the school board; however, recent economic experience has shown it to be beyond anyone's control.[1] Since inflation has become an event beyond the control of the nation, not to mention the Tucker County School Board, the denial of the supplements was within the authority of the school board. Appellants maintain that the statute rendered the payment of the supplement mandatory; however, we perceive that the board was confronted by the type of choice between fair pay for teachers and fair education for children that was contemplated by the statute when it provided for the sacrifice of salaries in the face of unforeseen circumstances.[2] To do otherwise would compel the Tucker County School Board to pay the teachers' supplement in perpetuity even if there were no buildings in which to teach, no books for the students to read, and no buses to transport the students to school.
As a majority of the Court indicated in the recent case of Pauley v. Kelly, W.Va., 255 S.E.2d 859 (1979) the local property tax is not the most egalitarian method of financing schools; however, until it is changed by the Legislature or found unconstitutional by this Court it is the method by which the education of the children of Tucker County must be financed.[3] Since Tucker County is rural and has not shared the pervasive prosperity which has led to record levels of inflation in most of America the Board is confronted with circumstances which require the choice between salaries and programs. If any events are ever to be considered beyond the Board's control this pincer between rising costs and comparatively stable property values must qualify.
For the foregoing reasons the judgment of the Circuit Court of Tucker County is affirmed.
Affirmed.
NOTES
[1] With an index year of 1967=100 in 1970 the Consumer Price Index was 116.3 and by 1976 the Consumer Price Index had increased to 170.5. Statistical Abstract of the United States 902 (1977). According to the U. S. Department of Commerce, Price and Wage Division, the inflation rate for the fiscal year 1974-75 was 11.5% and for 1975-76, the year in which the budget in question was written, the inflation rate was 9.7%.
[2] Appellants ingeniously argue that since the statute rendered the act mandatory, the burden of proof shifted to the county board of education to explain the reason for failing to provide the supplement. Since we determined that the impact of inflation was an event beyond the control of the county board and, therefore, the denial of the supplements was within the discretion of the school board, there is no need to address the issue of burden of proof.
[3] Appellants advance no claim that the school board's budgetary problem arises by virtue of a lack of compliance with the property tax assessment provision of W.Va.Code, 18-9A-11 [1972]. See Pauley v. Kelly, W.Va., 255 S.E.2d 859 at 880 et seq. (1979).