376 S.E.2d 340

**LOGAN COUNTY EDUCATION ASSOCIATION, Robert Lonker, President, Appellants,**

v.

**LOGAN COUNTY BOARD OF EDUCATION and Dr. Samuel P. Sentelle, Superintendent, Appellees.**

**No. 17698.**

Supreme Court of Appeals of West Virginia.

Dec. 21, 1988.

**328**

Charles R. Garten, Cagle & Garten, Logan, William McGinley, WVEA, Charleston, for appellants.

Richard D. Owen, Joseph Goodwin, Goodwin & Goodwin, Charleston, for appellees.

MILLER, Justice:

This is an appeal by the plaintiffs below, the Logan County Education Association (Association), a professional organization representing employees of the Logan County Board of Education (County Board), and Robert Lonker, president of the Association and a teacher employed by the County Board. The Circuit Court of Logan County granted a partial summary judgment in favor of the defendant in a declaratory judgment action under W.Va.Code, 55–13–1, *et seq.*, based upon a finding that the County Board had not violated the constitutional, statutory, or contractual rights of its professional employees by not implementing a previously approved salary increase.

## I.

The facts are not in dispute. This case turns on the legal significance of the County Board's action on April 15, 1982, when it met to review a proposed budget for the operation of the public school system in Logan County for the 1982–83 school year. At the meeting, the County Board unanimously voted to grant a pay raise of approximately 7.5 percent for all school personnel, which amounted to approximately $1.1 million. However, the county superintendent placed the salary increase in the capital outlay line item in the proposed budget. There is no dispute that the amount of increase was based upon anticipated additional property tax revenues.

The reason county education officials believed additional tax revenues might be available was a ruling by the Circuit Court of Logan County in a case styled *Killen v. Logan County Commission* that had been instituted by the County Board and its president. The circuit court held that W.Va.Code, 18–9A–11, which allowed county assessors to value property at 50 to 100 percent of its appraised value, violated the constitutional guarantee of "equal and uniform taxation throughout the State," W.Va. Const. art. X, § 1. It then certified this constitutional question to this Court. This certified question was pending before this Court during the County Board's budgeting process.

On July 2, 1982, this Court issued its opinion upholding the circuit court in *Killen v. Logan County Comm'n*, 170 W.Va. 602, 295 S.E.2d 689, 42 A.L.R. 4th 627 (1982), declaring the statute unconstitutional, but holding that this ruling would not be retroactive. On July 9, 1982, within a week of the *Killen* decision, the State Board of School Finance (Board of Finance)[1] ordered

1. The legislature created the State Board of School Finance in 1939, when it enacted legislation designed to establish a uniform system of budgeting for the use of all county school districts. W.Va.Code, 18–9B–1, *et seq.* The Board of Finance consists of three members: the State superintendent of schools, who serves as the chairman; the State tax commissioner; and the director of the budget, who serves as secretary. W.Va.Code, 18–9B–3.

A county board must submit its proposed budget to the Board of Finance together with such expenditure schedules as may be required. W.Va.Code, 18–9B–6 (1972), provides as pertinent here:

"A county board shall not finally adopt its budget until after the written approval of the board of finance has been received, and the levy estimate has been approved by the tax commissioner as required by law. If the tax commissioner finds that the levy estimate, based upon the budget, does not conform to the requirements of law, the board shall authorize and require such further revision of the budget as may be necessary for the correction of the levy estimate as required by the tax commissioner.

"A county board of education shall submit a preliminary budget upon requirement of the board of finance, which approved budget shall be considered by the tax commissioner when approving levy estimates."

the County Board to revise its budget downward, to reflect a lower tax revenue estimate without the *Killen* increase for the 1982–83 school year. On July 22, 1982, the County Board passed a motion to amend the budget to reflect the lower revenue estimate. This had the effect of voiding the proposed pay raise.

The plaintiffs contended below, as they do here, that the County Board violated the provisions of two statutes. The first is W.Va.Code, 18–9B–8 (1967), set out in note 4, *infra*, which relates to the order in which budgetary items may be reduced. The second is W.Va.Code, 18A–4–5 (1969), set forth in pertinent part in note 6, *infra*, which provides that local salary supplements cannot be reduced except in certain circumstances. The plaintiffs also contend that the County Board breached its contract with its employees by failing to pay the salary increases. They claim that they have been denied due process of law because the salary supplement was eliminated without notice and a hearing.[2] They characterize the salary supplement as a protected property interest.

The circuit court found that the County Board had never adopted a salary increase, reasoning that the budget approved did not contain any increases in the line item for salaries. Since the anticipated tax revenues were placed in a capital outlay line item, teacher salaries were never increased or decreased. The circuit court, therefore, concluded that teacher salaries had not

been reduced in violation of either W.Va. Code, 18–9B–8, or W.Va.Code, 18A–4–5.

The circuit court also found that the failure to implement the salary increase did not constitute a breach of contract, noting that the County Board had fulfilled its contractual obligation by paying the same salary level for the 1982–83 school year as it had paid in the previous year. Finally, the circuit court found no merit in the contention that the plaintiffs had a protected property interest in receiving a pay increase. The court determined that the plaintiffs had nothing more than a mere expectation of receiving a pay increase, which was subject to the contingency that the county would receive increased tax revenues as a result of the *Killen* decision.

## II.

■ We agree with the circuit court's determination that the County Board did not violate the provisions of W.Va.Code, 18–9B–8, but we reach this conclusion based upon the language of the statutes, rather than the theory adopted by the circuit court. The trial court did not have the benefit of our decision in *Summers County Educ. Ass'n v. Summers County Bd. of Educ.*, 179 W.Va. 107, 365 S.E.2d 387 (1987), which involved a situation similar to the present case involving W.Va.Code, 18–9B–8, in which we held that this statute applied to a situation where the county board's budget did not cover a full school year.[3] There, the county board of edu-

---

**2.** The plaintiffs also alleged in their amended complaint that the County Board's action in deleting some $1.1 million from the school budget on July 15, 1982, was taken in reaction to certain political activities and violated the plaintiffs' constitutional rights of free association and free speech. The parties agreed below that genuine issues of material fact existed as to this First Amendment issue and it, therefore, was not appropriate for summary judgment. Consequently, this issue is not before us in this proceeding.

**3.** W.Va.Code, 18–9B–8 (1967), provides:

"If the board of finance finds that the proposed budget for a county will not maintain the schools for the employment term, it may require that the budget be revised so as to provide as much of the employment term as possible; but in no case shall permit the re-

duction of the instructional term. *Any required revision in the budget for this purpose may be made in the following order:*

"(1) Postpone expenditures for permanent improvements and capital outlays except from the permanent improvement fund;

"(2) Reduce the amount budgeted for maintenance exclusive of service personnel so as to guarantee the payment of salaries for the employment term;

"(3) Reduce the number of noninstructional days;

"(4) Reduce the amount of salary paid in excess of that fixed by section two [§ 18–7–2], article seven of this chapter;

"(5) Adjust amounts budgeted in any other way so as to assure the required instructional term of one hundred eighty days under the applicable provisions of law." (Emphasis added).

cation had passed a budget eliminating the payment of local salary supplements which previously had been funded by a five-year excess levy. This action was taken after the voters in the county had voted down on several occasions a referendum for a new five-year excess levy.

■ In *Summers County*, we rejected the contention that the salary supplement should be reinstated because the county board did not follow the requirements of W.Va.Code, 18–9B–8. We pointed out that this statute, when read in conjunction with W.Va.Code, 18–9B–7,[4] made it plain that this provision relates to a school budget which involves funding for less than a full employment or school term:

> "This provision addresses a situation in which a school board prepares a budget that contemplates cutting work days from the full school schedule. Specifically, § 18–9B–8 does not apply unless 'the Board of Finance finds that the proposed budget for a county will not maintain the schools for the employment term.'

> "The Summers County Board of Education did not submit a budget based on a reduced employment term, and the Board of Finance accordingly did not make the kind of finding that would invoke the provisions of § 18–9B–8."

Under *Summers County*, the County Board in this case did not violate the provisions of W.Va.Code, 18–9B–8. This is not a case in which the County Board approved a budget providing for less than a full employment term. We, therefore, conclude that the plaintiffs' argument on this issue is not meritorious.

### III.

■ We also find that the County Board did not violate W.Va.Code, 18A–4–5, relating to local funds for supplementing instructional salaries.[5] We have applied this statute on two occasions. In *Summers County*, we upheld the trial court's finding that the county board had been "forced to" eliminate the payment of local funds to supplement the State minimum salaries "by [the] failure of a special levy" and, thus, had not violated W.Va.Code, 18A–4–5. We also rejected the association's contention that the discontinuance of the salary supplements was arbitrary and capricious because excess funds were available to pay the salary supplements.

The other occasion we considered this statutory provision was in *Newcome v. Board of Educ. of Tucker County*, 164 W.Va. 1, 260 S.E.2d 462 (1979), where the

---

4. W.Va.Code, 18–9B–7 (1967), provides:
    "The board of finance, before giving its final approval to a proposed budget, shall require that:
    "(1) Estimates of revenue and receipts are reasonable and accurate;
    "(2) Amounts are budgeted so as to cover actual requirements of school operation;
    "(3) Amounts are budgeted so as to maintain the schools of the county for the employment term; or, if the employment term cannot be maintained, amounts are budgeted so as to assure the maximum length of such term possible, but not for less than the instructional term as defined in section fifteen [§ 18–5–15], article five of this chapter.
    "*The board of finance may authorize budgeting for less than the employment term only if it finds, upon petition of the county board* setting forth the circumstances in full, that the best interests of the county schools will be promoted by the use of available funds for purposes other than the maintenance of the maximum employment term in view of funds available for expenditure." (Emphasis added).

An "employment term" is defined in W.Va.Code, 18–9B–2 (1967), as "ten months of employment."

5. W.Va.Code, 18A–4–5 (1969), provided at the time the 1982–83 budget was approved:

    "Provided, That in establishing such local salary schedules, no county, from the effective date of this act [July 1, 1969], shall reduce local funds allocated for instructional salaries and used in supplementing the state mandated salaries as provided for in this article, *unless forced to do so by failure of a special levy, or a loss in assessed values, or state aid, or events over which it has no control.*" (Emphasis added).

    As we noted in *Summers County*, 179 W.Va. at 109 n. 2, 365 S.E.2d at 389 n. 2, W.Va.Code, 18A–4–5, was amended in 1984 and in 1985. We deal here, as we did in *Summers County*, with the statutory provision in effect in 1982. W.Va.Code, 18A–4–5a (1987), includes similar language permitting a county board of education to reduce local salary supplements in certain delineated circumstances.

county board had eliminated a $500 local salary supplement because of lack of property tax revenues. We affirmed the denial of a writ of mandamus to require inclusion of the salary supplement in the budget, because the county board had been confronted with economic "events over which it [had] no control." [6]

Each of these cases dealt with the special circumstances set out in W.Va.Code, 18A–4–5, which allows a local board of education to reduce local funds allocated for instructional salaries and used in supplementing the State mandated salaries. In this case, there was no reduction of local funds for instructional purposes from the preceding year. The plaintiffs simply did not obtain the 7.5 percent pay raise placed in the proposed budget at the April, 1982 board meeting.

The plain language of the provisions of W.Va.Code, 18A–4–5, which relates to reduction of local funds allocated for instructional salaries and used in supplementing the State mandated salaries, does not apply to a proposed pay raise which is not implemented.

## IV.

The plaintiffs' contract and property interest due process arguments may be disposed of together. Both claims are bottomed on the theory that when the County Board adopted the pay increase resolution and its proposed budget on April 15, 1982, an enforceable contract right arose which could not be subsequently rescinded.

We do not believe this claim is sustainable as it ignores the language of W.Va. Code, 18–9B–6, which precludes a county board from adopting a final budget "until after the written approval of the board of finance has been received, and the levy estimate has been approved by the state tax commissioner as required by law." W.Va.Code, 18–9B–6.[7] This statute is designed to ensure that a proposed budget submitted by a local school board conforms to the law and, in particular, that the levy estimates are correct.

In the present case, the tax commissioner determined that the County Board's levy estimates in its proposed budget were too high by approximately $1.1 million and required it under W.Va.Code, 18–9B–6, to reduce its budget by that amount. In making such reduction, the County Board was authorized to rescind a general pay raise which was to be funded by such additional levy estimates.[8]

Finally, the plaintiffs' claim that they had a property interest in the proposed pay raise is not well founded. The nature of the budget process under the requirements of W.Va.Code, 18–9B–6, makes it clear that a local board of education cannot be bound to a proposed budget which has not received approval by the Board of Finance and the State tax commissioner. Thus, until such proposed budget is approved, no person interested in it can assert a "legitimate claim of entitlement" which under our cases is the cornerstone to a property interest claim, as we explained in Syllabus Point 2 of *State ex rel. McLendon v. Morton*, 162 W.Va. 431, 249 S.E.2d 919 (1978):

"'A "property interest" includes not only the traditional notions of real and personal property, but also extends to those benefits to which an individual may be deemed to have a legitimate claim of entitlement under existing rules or

6. The Syllabus of *Newcome* states:
  "Where a county has a property tax base which does not increase in assessed value at a rate commensurate with inflation so that there is a decline in revenue relative to expenses and a local school board is forced to choose between eliminating a local pay supplement for teachers or curtailing its educational programs for children, the local board is confronted, in that event, with 'events over which it has no control' within the contemplation of *W.Va.Code*, 18A–4–5

[1969] and may cancel the teacher supplement."

7. For the full text of W.Va.Code, 18–9B–6, *see* note 1, *supra.*

8. There is no dispute that the pay raise was connected to the increased levy estimates. We do not deem it significant that the additional levy amounts were placed by a school administrator in the capital line item rather than the personnel line item as authorized by the board.

**332**

understandings.' Syllabus Point 3, *Waite v. Civil Service Commission,* [161] W.Va. [154], 241 S.E.2d 164 (1977)."

This case bears some analogy to *Freeman v. Poling,* 175 W.Va. 814, 338 S.E.2d 415 (1985), where certain deputy sheriffs claimed they had a property interest in their continued employment. They asserted that the sheriff had promised them their jobs were secure under a new county civil service system. However, it appeared that none of the deputies was qualified under the system.

In denying them any entitlement, we said: "Where state law withholds [an] entitlement ... until certain conditions are met, the employee cannot acquire a property interest sufficient to invoke due process protection. *See Bishop v. Wood,* 426 U.S. 341, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976)." 175 W.Va. at 818, 338 S.E.2d at 419. We also concluded in Syllabus Point 2 of *Freeman:*

"Although a government employee may have a reasonable basis for understanding terms of his employment, those understandings cannot override state law that defines the terms of employment."

Here the plaintiffs could not claim a legitimate entitlement based only on the pay raise resolution contained in the proposed budget. This is because the pay raise was predicated on increased tax revenue estimates which the State tax commissioner found unwarranted under W.Va.Code, 18–9B–6.

For the foregoing reasons, we, therefore, affirm the judgment of the Circuit Court of Logan County.

AFFIRMED.