411 S.E.2d 466

**David ROBBINS, Diana Parks, and James David, Appellants,**

v.

**McDOWELL COUNTY BOARD OF EDUCATION, Appellee.**

**No. 20113.**

Supreme Court of Appeals of West Virginia.

Submitted Sept. 18, 1991.

Decided Nov. 1, 1991.

Larry Harless, Charleston, for appellants.

Robert E. Blair, Welch, for appellee.

Webster J. Arceneaux, III, William McGinley, Charleston, amicus curiae Brief for the West Virginia Educ. Ass'n.

MILLER, Chief Justice:

This is an appeal from a final order of the Circuit Court of McDowell County, dated September 18, 1990, which denied the petition of three vocational education teachers for a writ of mandamus to compel the McDowell County Board of Education (the Board) to grant them the same monetary inducements awarded vocational education teachers hired between 1974 and 1984. At issue is whether the disparity in treatment violates the uniformity of pay provisions of W.Va.Code, 18A–4–5a.

The facts are essentially undisputed. It appears that in 1974, the Board found a need to attract skilled workers, such as welders, from private industry to teach at McDowell County's vocational education school (Vo–Tech Center). To this end, the Board established a policy of paying qualified teachers at the Vo–Tech Center as if they had three additional years of teaching experience. As a result, teachers at the Vo–Tech Center were advanced three steps, or experience increments, up the pay scale ahead of equally educated and experienced teachers in other schools in the county.

In 1984, the Board repealed the policy, abolishing the supplemental experience increment for vocational education teachers hired after July 1, 1984. Teachers who had previously received the three-year experience increment were expressly allowed to keep it.[1]

The appellants herein are all vocational education teachers who were either hired or transferred to the Vo–Tech Center after July 1, 1984.[2] In September of 1989, they learned that some of their colleagues were being paid the supplemental experience increment. On October 12, 1989, the appellants filed grievances, alleging that they should be compensated at the same level. A hearing was held, and ultimately the matter came before the West Virginia Education and State Employees Grievance Board (Grievance Board).

In a decision dated February 28, 1990, the Grievance Board found no significant difference between the duties of the appellants and those of the seventeen vocational teachers then receiving the supplemental experience increment and concluded that the disparate treatment violated the uniform pay provisions of W.Va.Code, 18A–4–5a. The Grievance Board also concluded, however, that the appellants had not demonstrated their entitlement to the supplemental increment and granted the grievance "only to the extent that the [Board] is ordered to correct the inequity as soon as such correction can legally be made."

Neither side appealed the Grievance Board's decision within thirty days as required by W.Va.Code, 18–29–7. In March of 1990, the Board rejected a recommendation that it cease further supplemental increment payments to the seventeen voca-

1. The Board's Policy 8–044, adopted on June 26, 1984, provides, in pertinent part:

    "[I]t shall be the policy of this Board of Education to no longer (effective July 1, 1984) compensate individuals employed in the future as Vocational teachers whether T & I certificated or Degree certificated based on an advanced three-year experience increment. If a need occurs for any teacher with only T & I certification, employment incentives may be considered.

    "Nothing herein shall effect the current experience increment paid to any Vocational teacher presently employed and paid under the 1974–75 action until such teacher shall retire or resign."

2. Appellants David Robbins and James David were first hired by the Board on July 22, 1985, and August 28, 1989, respectively. Appellant Diana Parks was initially hired by the Board on August 26, 1974, but was not assigned to the Vo–Tech Center until August 1, 1985.

tional teachers who were hired before July 1, 1984.

On May 31, 1990, the appellants filed a petition for a writ of mandamus in the Circuit Court of McDowell County to compel the Board to increase their salaries and to provide them with back pay to reflect their disparate treatment. The circuit court concluded that the Board could legally neither increase the appellants' salaries nor decrease those of the other vocational teachers. The court ruled that the inequity in pay levels could only be eliminated through attrition and denied the writ of mandamus.

In this appeal, the appellants assert a violation of the uniform pay provisions of the state education code. W.Va.Code, 18A-4-2, establishes a minimum salary schedule for teachers based on experience and education. Pursuant to W.Va.Code, 18A-4-5a (1984), the statute in effect at the time the grievances were filed, county boards of education were required to use the minimum salary schedule in fixing teacher pay, but were allowed to establish salaries in excess of the state minimum, "such county schedules to be uniform throughout the county as to ... training classifications, experience, responsibility and other requirements[.]" The second paragraph of the statute also authorized county boards of education to pay higher salaries to those teachers who perform special or additional duties or are assigned special responsibilities, but stated that

"[u]niformity also shall apply to such additional salary increments or compensation for all persons performing like assignments and duties within the county[.]" This paragraph also contained a proviso precluding county boards from reducing the local funds used to pay salary supplements "unless forced to do so by defeat of a special levy, or a loss in assessed values or events over which it has no control and for which the county board has received approval from the state board prior to making such reduction." The current statute, W.Va. Code, 18A-4-5a (1990), contains similar provisions.[3]

In *Weimer-Godwin v. Board of Education*, 179 W.Va. 423, 369 S.E.2d 726 (1988), we dealt with special pay supplements for music teachers. We recognized that nothing requires a county board to provide teachers with additional compensation in excess of the statutory minimum salaries. We stated in Syllabus Point 1, however:

"Under *W.Va.Code*, 18A-4-5 [1969] and its successor, *W.Va.Code*, 18A-4-5a [1984], once a county board of education pays additional compensation to certain teachers, it must pay the same amount of additional compensation to other teachers performing 'like assignments and duties[.]'"

In this appeal, everyone apparently agrees that the appellants and the teachers currently receiving the supplemental experience increment have performed "like as-

---

**3.** W.Va.Code, 18A-4-5a (1990), reads, in pertinent part:

"County boards of education in fixing the salaries of teachers shall use at least the state minimum salaries established under the provisions of this article. The board may establish salary schedules which shall be in excess of the state minimums fixed by this article, such county schedules to be uniform throughout the county as to the classification of training, experience, responsibility and other requirements.

"Counties may fix higher salaries for teachers placed in special instructional assignments, for those assigned to or employed for duties other than regular instructional duties, and for teachers of one-teacher schools, and they may provide additional compensation for any teacher assigned duties in addition to the teacher's regular instructional duties

wherein such noninstructional duties are not a part of the scheduled hours of the regular school day. *Provided*, That in establishing such local salary schedules, no county shall reduce local funds allocated for salaries in effect on the first day of January, one thousand nine hundred ninety, and used in supplementing the state minimum salaries as provided for in this article, unless forced to do so by defeat of a special levy, or a loss in assessed values or events over which it has no control and for which the county board has received approval from the state board prior to making such reduction." (Emphasis in original).

W.Va.Code, 18A-4-5a (1984), also authorized county boards to provide, "in a uniform manner," for dental, optical, and other benefits. Similar provisions appear in W.Va.Code, 18A-4-5a (1990).

signments and duties" within the meaning of the statute. Consequently, there is no challenge before this Court to the Grievance Board's conclusion that denial of the additional increment to the appellants violates the uniformity provisions of W.Va. Code, 18A–4–5a.

Instead, the principal issue is how the Board should resolve the inequity. The Board asserts that it cannot legally eliminate the additional experience increment for those teachers hired before July 1, 1984. The Board relies on the proviso contained in W.Va.Code, 18A–4–5a, which prevents county boards from reducing salary supplements except in certain limited circumstances. There is no evidence that any of the conditions precedent to reduction of a salary supplement have occurred in this case. However, we believe the Board's reliance on this proviso is misplaced.

W.Va.Code, 18A–4–5a, contains a number of provisions relating to county salary supplements. In its first paragraph, it authorizes counties to establish higher salaries than those authorized by the state minimum salaries set out in W.Va.Code, 18A–4–2. This local salary schedule must be "uniform throughout the county as to the classification of training, experience, responsibility and other requirements[.]" This provision refers to broad-based salary supplements that are extended throughout the county to all teachers. This paragraph also acknowledges that uniformity need not mean that each teacher receives the same supplemental amount. The uniformity provision allows consideration for "classification of training, experience, responsibility and other requirements[.]" [4] There must, however, be uniformity of pay among teachers of similar classification, training, experience, responsibility and other requirements.

The second paragraph of W.Va.Code, 18A–4–5a, creates a more narrow class of salary supplements. There are four categories of teachers who qualify for these supplements: (1) teachers placed in special instructional assignments; (2) teachers assigned to or employed for duties other than regular instructional duties; (3) teachers of one-teacher schools; and (4) teachers assigned duties in addition to regular instructional duties and which are not a part of the scheduled hours of the regular school day.

We are not advised in which category the teachers at the Vo–Tech Center are placed. It seems apparent that they fall under the second paragraph of W.Va.Code, 18A–4–5a, as teachers placed in special instructional assignments. In *Weimer–Godwin,* we observed that because the word "may" was used, the salary supplements identified in the second paragraph were optional: "[A] county board of education is ordinarily not required to provide additional compensation for teachers in the specified circumstances." 179 W.Va. at 427, 369 S.E.2d at 730.

Of particular importance is the uniformity language in the second paragraph of W.Va.Code, 18A–4–5a: "Uniformity also shall apply to such additional salary increments or compensation for all persons performing like assignments and duties within the county[.]" The use of the phrase "additional salary increments or compensation" refers to those special categories of salary supplements identified in the first sentence of the paragraph. This uniformity language is in marked contrast to that in the first paragraph of W.Va.Code, 18A–4–5a, which, as we have earlier discussed, is qualified by a number of factors, including "classification of training, experience, responsibility and other requirements." Thus, as in *Weimer–Godwin,* the salary supplement is a specific amount for the special work undertaken without reference to classification of training or experience.

This point becomes important when we consider the proviso in the second paragraph of W.Va.Code, 18A–4–5a, which requires a county board to maintain supplemental local salary schedules unless it is forced to abandon them by one of three

---

**4.** Some of these factors are embodied in the state minimum salary schedules. *See* W.Va. Code, 18A–4–2.

events: (1) the defeat of a special levy, (2) a loss in assessed values, or (3) an event over which the county board has no control and for which the county board has received approval of the West Virginia State Board of Education prior to making the reduction.

We spoke to the office of provisos in *State ex rel. Simpkins v. Harvey,* 172 W.Va. 312, 305 S.E.2d 268 (1983), where we determined that it removed certain identified subjects from the generality of the statutory language preceding the proviso.[5] In Syllabus Point 2 of *State v. Ellsworth J.R.,* 175 W.Va. 64, 331 S.E.2d 503 (1985), we discussed the role of a proviso in these terms:

> "The function of a proviso in a statute is to modify, restrain, or conditionally qualify the preceding subject to which it refers."

By the proviso in W.Va.Code, 18A–4–5a, the legislature indicated that the broad county-wide supplemental pay schedules authorized in the first paragraph of that section cannot be reduced once adopted by a county board unless one of the conditions contained in the proviso is met. *See Logan County Educ. Ass'n v. Logan County Bd. of Educ.,* 180 W.Va. 326, 376 S.E.2d 340 (1988); *Summers County Educ. Ass'n v. Summers County Bd. of Educ.,* 179 W.Va. 107, 365 S.E.2d 387 (1987); *Newcome v. Board of Educ.,* 164 W.Va. 1, 260 S.E.2d 462 (1979).

This result obtains for several reasons. First, the proviso refers to "local salary schedules," which is keyed to the general salary schedules referred to in the first paragraph of W.Va.Code, 18A–4–5a. This is in contrast to the terminology used in the second paragraph relating to "higher salaries" for special duty teachers. This more narrow category of compensation is carried into the uniformity clause in the second paragraph, which refers to "additional salary increments or compensation," paid to those teachers who are in the special categories described in the second paragraph.

Second, the language in the proviso specifically refers to funds "used in supplementing state minimum salaries[.]"[6] This is an obvious reference to the supplements to the state minimum salaries described in the first paragraph of W.Va.Code, 18A–4–5a. As we have previously pointed out, these are the broad-based salary supplements which must be made available to all teachers in the county. These salary supplements are different from those involved in this case, which are authorized in the second paragraph of the statute.

Moreover, as *Logan County Education Association, supra,* and *Summers County Education Association, supra,* suggest, across-the-board increases of salaries above the state minimum usually involve substantial monetary amounts. They are ordinarily generated by special levies or anticipated increases in property tax revenues. The design of the proviso is to keep an increased local salary schedule operational while these sources of income exist.

Thus, we come to the conclusion that the proviso is designed to apply to the broad salary schedules in the first paragraph of W.Va.Code, 18A–4–5a. It does not apply to those more limited categories of salary supplements outlined in the second paragraph of the statute. Consequently, a local board may withdraw or cancel these special supplements without showing the existence of any of the three conditions set out in the proviso. If, however, a local board determines to decrease or abolish this type of special salary supplement, it must do so uniformly for all those performing like assignments and duties within the county.

In this case, neither the Grievance Board nor the circuit court was able to resolve this issue. This is understandable since there was no authoritative guidance from this Court as to the proper construction of W.Va.Code, 18A–4–5a. The Board here de-

---

5. In note 7, in part, of *State ex rel. Simpkins v. Harvey,* 172 W.Va. at 317, 305 S.E.2d at 273, we stated:

> "In traditional terms, an 'exception' is said to restrict the enacting clause of the statute to a particular case, while a 'proviso' is said to remove special cases from the general enactment and provide for them specially. 1A *Sutherland Statutory Construction* § 20.22 (1972)."

6. For the full language of the proviso, see note 3, *supra.*

cided to stop paying the supplemental experience increment to new teachers in 1984. It should have taken the additional step of rescinding payments to the individuals who had received the supplement prior to 1984. This would be required by the uniformity language in the second paragraph of W.Va. Code, 18A–4–5a.[7]

Obviously, it would be inequitable to require the teachers who have been receiving the special salary supplement since 1984 to repay it. It would require us to extend our holding retroactively, which is not done where contract rights are involved. *See* Syllabus Point 5, *Bradley v. Appalachian Power Co.*, 163 W.Va. 332, 256 S.E.2d 879 (1979). On remand, the Board should promptly take appropriate steps to assure compliance with the uniform pay provisions of W.Va.Code, 18A–4–5a, in accordance with the principles set forth herein.

For the foregoing reasons, the judgment of the Circuit Court of McDowell County is reversed, and the case is remanded for further proceedings consistent with this opinion.

Reversed and remanded.

---

**7.** This language was quoted in the text, *supra,* but for convenience, we set it out here: "Uniformity also shall apply to such additional salary increments or compensation for all persons performing like assignments and duties within the county."