560 S.E.2d 515

Shirley CROCK and Grace Washington, Appellants Below, Appellants

v.

HARRISON COUNTY BOARD OF EDUCATION, Appellee Below, Appellee.

No. 29988.

Supreme Court of Appeals of West Virginia.

Submitted Jan. 16, 2002.

Decided Feb. 8, 2002.

Kathleen Abate, Cohen, Abate & Cohen, L.C., Morgantown, for the Appellants.

Basil R. Legg, Jr., Clarksburg, for the Appellee.

1. She is currently classified as an Aide III.

**PER CURIAM:**

Appellants Grace Washington and Shirley Crock challenge the October 17, 2000, ruling of the Circuit Court of Harrison County affirming the decision of an administrative law judge ("ALJ") concerning the propriety of certain actions taken by the Harrison County Board of Education (the "Board") that resulted in the removal of experience credits, which affected their rate of pay, but not their seniority. The circuit court affirmed the ALJ's decision that the Board acted lawfully when it terminated the Appellants' employment contracts and issued new contracts, which contained identical terms of employment but at a reduced rate of salary. Upon careful scrutiny of the record, applicable statutes, and precedent, we conclude that the lower court was in error and, accordingly, we reverse.

## I. Factual and Procedural Background

### A. Mrs. Washington

Mrs. Washington was hired by the Board in 1979 as an Aide II.[1] At the time of her initial hiring, Mrs. Washington was given experience credit for salary, not seniority purposes. Based on her prior employment with a Head Start program, she was given five years experience credit. Both her original employment contract and all subsequent contracts signed by the Board and Mrs. Washington reflect the granting of this experience credit. Mrs. Washington testified below that she took a "couple thousand on the year" pay cut when she accepted employment with the Board and further that, without the experience credit, she could not have afforded to work for the Board.

### B. Mrs. Crock

Mrs. Crock was first employed by the Board in February 1998 as an Aide II.[2] Based on the fact that she did not receive an experience credit upon her hiring, Mrs. Crock instituted a grievance proceeding in March 1998 pursuant to West Virginia Code § 18–29–3 (1992) (Repl.Vol.1999). In support of her position, Mrs. Crock cited the provisions of West Virginia Code § 18A–4–5b

2. She remains classified as an Aide II at the present time.

(1990) (Repl. Vol 2001), which require uniformity for "all salaries, rates of pay, benefits, increments or compensation for all persons ... performing like assignments and duties within the county." By granting Mrs. Washington experience credit and denying her such a credit, Mrs. Crock argued that the uniformity provision contained in West Virginia Code § 18A-4-5b was violated.[3]

After determining that the Board "does not have a policy addressing whether service personnel are entitled to experience credit for outside employment," the ALJ found that "[g]rievant's prior experience is directly related to her ability to provide services as an aide to a student with cerebral palsy." The ALJ concluded that the Board's "failure to grant Grievant [Mrs. Crock] the credit for salary purposes constitutes discrimination" in view of the grant of an experience credit to Mrs. Washington. Accordingly, the ALJ ruled that the uniformity provisions of West Virginia Code § 18A-4-5b required the granting of the experience credit to Mrs. Crock.[4] As a result of the decision reached in this matter (hereinafter referred to as the "Crock decision"), Mrs. Crock was awarded an experience credit of ten years based on her pre-Board employment with the nursing home. This decision was affirmed by both the West Virginia Education and State Employees Grievance Board and the Circuit Court of Harrison County.[5]

### C. Current Grievance

In the Spring of 1999, Mrs. Washington was informed that, based on the Crock decision, the Board was going to take action that would result in a loss of the experience credit that had been included in the terms of her contract since she was first hired in 1979. In letters dated March 17, 1999, from the Superintendent of the Harrison County Schools, both Appellants were notified that their contracts were going to be terminated and that

new contracts would be issued that excluded their respective experience credits.[6] Appellants were both advised that the purpose for the change was the need to "maintain uniformity" in the salary schedules paid to aides and that they were entitled to a hearing, upon request, before the Board on March 29, 1999. The record suggests that both Appellants had a hearing with the Board at 1:30 on March 29, 1999, and that later that same afternoon, the Board voted to "approve" the Superintendent's motions that Appellants' contracts be terminated and new ones issued without providing for any experience credits. In letters dated April 1, 1999, Appellants were notified of the Board's actions with regard to their contracts.

Appellants initiated a joint grievance on April 12, 1999, contesting the termination of their contracts and the issuance of new contracts for the purpose of eliminating the experience credit previously granted to them. Following the level two hearing, which took place on August 31, 1999, a written decision denying the grievance was entered on October 13, 1999. See W.Va.Code § 18-29-4 (1995) (Repl.Vol.1999) (discussing procedural levels of grievance process). Appellants opted to bypass level three and proceeded to level four of the grievance process. On the scheduled date for the level four hearing, December 10, 1999, the parties agreed to submit the matter based upon the record developed at the level two proceedings. By ruling dated February 10, 2000, ALJ Denise Spatafore issued a decision denying the grievance and concluding that "[t]he termination of Grievants' contracts, and their replacement with modified contracts without prior experience credit, did not violate any law, policy, rule, regulation, or written agreement." Upon review, the circuit court agreed with the ALJ and concluded, by order entered October 17, 2000, that the Board

---

3. Mrs. Crock sought ten years experience credit for her employment at Heartland Nursing Home performing similar duties to those she was performing in her position as an aide.

4. This decision was issued by ALJ Sue Keller on September 30, 1998.

5. No further appeal was taken from this decision.

6. The Board initially advised Appellants that their contracts were being terminated due to a reduction in force. There was in fact no reduction in force, and the circuit court concurred with the ALJ's finding "that this case involves contract termination, not a reduction in force."

acted lawfully in terminating Appellants' respective contracts based on prospective budgetary concerns regarding the financial effects of granting experience credits to all aides employed by the county. Through this appeal, Mrs. Washington and Mrs. Crock seek a reversal of the lower court's order.

## II. Standard of Review

 It is well-established that "[a] final order of the hearing examiner for the West Virginia Educational Employees Grievance Board, made pursuant to W.Va.Code, 18–29–1, *et seq.* (1985), and based upon findings of fact, should not be reversed unless clearly wrong." Syl. Pt. 1, *Randolph County Bd. of Educ. v. Scalia*, 182 W.Va. 289, 387 S.E.2d 524 (1989). Like the circuit court, this Court reviews appeals taken from decisions of the West Virginia Educational Employees Grievance Board under the bases for error set forth in West Virginia Code § 18–29–7 (1985) (Repl.Vol.1999).[7] *See Martin v. Randolph County Bd. of Educ.*, 195 W.Va. 297, 304, 465 S.E.2d 399, 406 (1995). In an attempt to crystallize the applicable reviewing standards, we held in syllabus point one of *Cahill v. Mercer County Bd. of Educ.*, 208 W.Va. 177, 539 S.E.2d 437 (2000):

> Grievance rulings involve a combination of both deferential and plenary review. Since a reviewing court is obligated to give deference to factual findings rendered by an administrative law judge, a circuit court is not permitted to substitute its judgment for that of the hearing examiner with regard to factual determinations. Credibility determinations made by an administrative law judge are similarly entitled to deference. Plenary review is conducted as to the conclusions of law and application of law to the facts, which are reviewed de novo.

208 W.Va. at 177–78, 539 S.E.2d at 437–38.

 Our review in this case is clearly *de novo* as we are asked to determine whether the Board's actions in terminating the contracts of Appellants and reissuing new contracts without experience credits were permitted under both applicable statutes and case law applying those statutes.

## III. Discussion

 Appellants rely on two separate statutory provisions to argue that the Board was prohibited from terminating their contracts and then issuing new contracts that expressly omitted their respective experience credits and reduced their salaries. The first of these provisions is found in West Virginia Code § 18A–4–8(m) and states as follows:

> No service employee, without his or her written consent, may be reclassified by class title, nor may a service employee, without his or her written consent, be relegated to any condition of employment which would result in a reduction of his or her salary, rate of pay, compensation or benefits earned during the current fiscal year or which would result in a reduction of his or her salary, rate of pay, compensation or benefits for which he or she would qualify by continuing in the same job position and classification held during that fiscal year and subsequent years.

This provision is commonly referred to as the "non-relegation" clause.

Maintaining that the non-relegation clause is inapplicable, the Board relies on the decision reached by this Court in *Lucion v. McDowell County Board of Education*, 191 W.Va. 399, 446 S.E.2d 487 (1994). At issue in *Lucion* was the local board's decision to terminate the contracts of fifty-seven service personnel and then reissue contracts to those same employees with different terms[8] at reduced salaries for cost-saving purposes. In addition to holding that the procedures of

---

7. The statutorily-provided grounds for appeal arise when the hearing examiner's decision:
 (1) was contrary to law or lawfully adopted rule, regulation or written policy of the chief administrator or governing board, (2) exceeded the hearing examiner's statutory authority, (3) was the result of fraud or deceit, (4) was clearly wrong in view of the reliable, probative and substantial evidence on the whole record, or

(5) was arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.
W.Va.Code § 18–29–7.

8. The contracts were shortened, in most instances, from 261 to 240 days. *Lucion*, 191 W.Va. at 401, 446 S.E.2d at 489.

West Virginia Code § 18A–2–6 governing contract termination must be followed when a board of education decides to reduce the employment terms for particular jobs, we found that the non-relegation clause was not an impediment to the board's actions in *Lucion*. Our conclusion that the non-relegation clause was inapplicable, however, was expressly based on the fact that the new contracts issued "had reduced employment terms." 191 W.Va. at 404, 446 S.E.2d at 492. Due to the change in employment terms, we determined that the new positions were not the same as the positions previously held by the affected service personnel. Consequently, the non-relegation clause, which prohibits reduction of the salary or benefits of service personnel "continuing in the same job position and classification," without an employee's consent, was not applicable. W.Va.Code § 18A–4–8(m); *Lucion*, 191 W.Va. at 404, 446 S.E.2d at 492.

There are two fundamental distinctions that prevent the holding of *Lucion* from controlling this case. First, and foremost, is the fact that the new contracts issued to Mrs. Washington and Mrs. Crock were *identical* in terms to the old contracts. There were no changes in the length of the work-year nor any changes in the positions they were to hold. The only change was the removal of the experience credit with the consequent reduction in salary. This reduction in salary comes squarely within the prohibited acts specified in the non-relegation clause. *See* W.Va.Code § 18A–4–8(m). The second distinguishing factor that prevents *Lucion* from controlling the instant case is the lack of any evidence that the Crock decision would produce the drastic financial ramifications suggested by the Board. While the need to implement cost-cutting measures was immediate when the contracts were terminated and reissued in *Lucion*, in this case the Board appears to have acted solely out of an unsubstantiated fear that numerous aides, under authority of the Crock decision, would

be seeking experience credits. In making its decision, the circuit court similarly relied on the projected harm that might result were all 150 county aides to seek simultaneously to come within the purview of the Crock decision. Based on this unsupported factual premise, the circuit court concluded that *Lucion* permitted the Board's actions. Because no evidence was adduced on this issue, we have no way of knowing whether *any* of the other aides would have sought enhanced pay through means of the experience credit.[9]

The Board's reliance on *Lucion* was clearly misplaced under the facts of this case. In marked contrast to the determinative facts in *Lucion*, there were no changes in the terms of Appellants' contracts. Additionally, the Board's actions were not taken in response to any actual budgetary crisis.[10] By altering the contracts of Appellants in the manner undertaken in this case, the Board clearly violated the provisions of the non-relegation clause. *See* W.Va.Code § 18A–4–8(m).

■ In addition to violating the non-relegation clause, Appellants argue that the Board violated the provisions of West Virginia Code § 18A–4–5b, which addresses county salary supplements for service personnel. This statute, which contains the uniformity provision relied upon to grant Mrs. Crock an experience credit, also contains language providing that:

in establishing such local salary schedules, no county shall reduce local funds allocated for salaries in effect on the first day of January, one thousand nine hundred ninety, and used in supplementing the state minimum salaries as provided for in this article, unless forced to do so by defeat of a special levy, or a loss in assessed values or events over which it has no control and for which the county board has received approval from the state board prior to making such reduction.

W.Va.Code § 18A–4–5b.

While there is some confusion over whether the experience credit given to Appellants

---

9. We observe, however, that since the statutory period for filing a grievance is only fifteen days, it is doubtful that there are many aides who were in situations similar to Mrs. Crock's, as they could have filed a grievance after the issuance of the Crock decision on September 30, 1998. *See* W.Va.Code § 18–29–4.

10. The Board maintains that it was seeking "to prevent a potentially catastrophic explosion of future employment costs."

qualifies as a salary supplement [11] within the meaning of West Virginia Code § 18A–4–5b since the experience credit, while it elevated Appellants' pay on the salary scale, was not given pursuant to an across-the-board type of supplemental salary scale,[12] this issue is not determinative of the matter before us.[13] The language of West Virginia Code § 18A–4–5b critical to resolving the issue at hand is located in the last sentence and reads: "Nothing herein shall prohibit the maintenance nor result in the reduction of any benefits in effect on the first day of January, one thousand nine hundred eighty-four, by any county board of education." Clearly, this provision resolves the issue of whether Mrs. Washington's experience credit could have been eliminated in the manner undertaken by the Board. Since Mrs. Washington was granted the benefit of the experience credit in 1979, six years before the enactment of West Virginia Code § 18A–4–5b, there is no question that she is subject to the grandfather clause of that provision. The intent of the Legislature to implement the uniformity provisions in a prospective fashion is clear. Accordingly, the uniformity provisions enacted in 1984, that apply to the paying of salary and benefits to personnel who are employed in similar position within the county, do not affect Mrs. Washington. Thus, the Board was without authority to remove the experience credit from Mrs. Washington's contract under the guise of the uniformity provision of West Virginia Code § 18A–4–5b.

Having been hired initially by the Board in 1998, Mrs. Crock is not subject to the grandfather clause of West Virginia Code § 18A–4–5b. As the result of successful litigation, however, the Circuit Court of Harrison County determined that she was entitled to the experience credit, and that unappealed decision remains "the law of the case." In addition, Mrs. Crock is entitled to the protections of the non-relegation clause. Given our determination that the exception carved out to the non-relegation clause in *Lucion* is inapplicable, the Board was prohibited by statutory mandate from terminating her contract and reissuing essentially the same contract just without the experience credit. *See* W.Va.Code § 18A–4–8(m). Because the new contract was indeed for the same position with no altered terms, and because the new contract was for a reduced salary, the Board's actions with regard to Mrs. Crock were in violation of the non-relegation provisions of West Virginia Code § 18A–4–8(m).

During oral argument of this case, we were advised that the Board has recently adopted a policy which expressly disallows experience credits to aides employed by the county. This policy adoption clearly postdates the underlying decisions in this case and, accordingly, has no controlling effect on the matters before us. To be clear, however, we view the cases of the two aides before us as exceptions to the current policy adopted by the Board that prohibits extension of experience credits based on pre-Board employment. We further observe that, barring the unique circumstances of Mrs. Washington and Mrs. Crock's cases, the uniformity clause contained in West Virginia Code § 18A–4–5b might stand as an impediment to allowing these aides to

---

**11.** We think it is clear, however, that experience credits must be viewed as county salary supplements, given that the effect of the credit is to elevate the personnel's salary above the legislated amounts of minimum monthly salaries provided for in West Virginia Code § 18A–4–8a, which are based on "years of employment." W.Va. Code § 18A–4–8(i)(2) (2001).

**12.** Appellants maintain, and the Board does not dispute, that long-standing approval from the State Superintendent of Education exists regarding the use of supplemental salary payments.

**13.** Relying on *Robbins v. McDowell County Board of Education,* 186 W.Va. 141, 411 S.E.2d 466 (1991), the Board argues that the experience credit constitutes a "special," rather than a "regular" salary supplement. The Board makes this argument in an attempt to suggest that they can

reduce or eliminate a special supplement (i.e. experience credit) without concern for the proviso language that restricts reduction of local funds allocated for salary supplements in effect on January 1, 1990, unless one of three conditions can be demonstrated (e.g. defeat of special levy; loss in assessed values; events over which county board had no control). The Board's reliance on *Robbins* is misplaced. That decision concerned a distinct statute—W.Va.Code § 18A–4–5a—, which addresses salary supplements for *teachers.* Because section 5a contains language lacking in section 5b (the designation of specified instructional assignments deserving so-called "special" salary supplements), the distinctions drawn in *Robbins* regarding special and regular salary supplements are inapplicable to this case.

receive the benefit of the experience credits granted to them. We cannot conclude, however, that the Legislature intended to permit the non-relegation clause to be thwarted through the adoption of a county board of education policy that generally prohibits salary supplements to aides based on pre-Board employment experience. *See* W.Va.Code § 18A–4–8(m). We feel certain that the Legislature would not sanction the deprivation, to either aide at issue here, of the benefit of their respective experience credits, and in Mrs. Crock's case, the results of her successful grievance proceeding.

Based on the foregoing, the decision of the Circuit Court of Harrison County is hereby reversed and remanded with directions to enter an order restoring the experience credits formerly granted to Appellants and directing the Board to remit to Appellants the resulting difference in increased salary that their respective experience credits required from July, 1, 1999, forward.

Reversed and Remanded With Directions.