**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

*In re* **N.S.**

**No. 24-708** (Harrison County CC-17-2023-JA-107)

## MEMORANDUM DECISION

Petitioner Father D.S.[1] appeals the Circuit Court of Harrison County's November 4, 2024, order terminating his parental and custodial rights to N.S., arguing that the circuit court erred in denying his motion to continue the dispositional hearing, denying him a post-adjudicatory improvement period, and failing to impose a less restrictive disposition.[2] Upon our review, we determine that oral argument is unnecessary and that a memorandum decision affirming the circuit court's order is appropriate. *See* W. Va. R. App. P. 21.

The DHS filed a petition[3] in August 2023, alleging that the petitioner failed to adequately supervise the child and exposed the child to drug abuse and/or a drug-endangered environment. The DHS also alleged that the petitioner agreed to a safety plan before the petition was filed, requiring the child to reside with a family member, based on his substance abuse.

The court held an initial hearing in September 2023. The petitioner, who had not been served, did not appear but was represented by counsel. Service by publication was achieved on October 10, 2023, pursuant to West Virginia Code § 49-4-601(e)(4), notifying the petitioner of an adjudicatory hearing to be held in November 2023. The petitioner did not appear for that hearing

---

[1] The petitioner appears by counsel Vanessa Lynn Rodriguez. The West Virginia Department of Human Services appears by counsel Attorney General John B. McCuskey and Assistant Attorney General Katica Ribel. Counsel Allison S. McClure appears as the child's guardian ad litem ("guardian").

Additionally, pursuant to West Virginia Code § 5F-2-1a, the agency formerly known as the West Virginia Department of Health and Human Resources was terminated. It is now three separate agencies—the Department of Health Facilities, the Department of Health, and the Department of Human Services. *See* W. Va. Code § 5F-1-2. For purposes of abuse and neglect appeals, the agency is now the Department of Human Services ("DHS").

[2] We use initials where necessary to protect the identities of those involved in this case. *See* W. Va. R. App. P. 40(e).

[3] The proceedings below concerned additional children and respondents not at issue on appeal.

1

but was represented by counsel, who proffered that she had made numerous attempts to contact him. The petitioner was again served by publication with notice of the continued adjudicatory hearing in March 2024, to which he appeared by video having recently been incarcerated following his arrest on several felony charges.[4]

The court ultimately held an adjudicatory hearing in May 2024. The petitioner testified that he had not been the child's primary caregiver prior to the petition's filing. However, the child resided with him "as much as possible"—three to four days per week. The petitioner acknowledged his history of substance abuse and admitted that he used drugs when the child was in his care, including times when the petitioner was the child's emergency decision-maker. Specifically, the petitioner admitted to using fentanyl and methamphetamine, which he would smoke in the bathroom of his home, at times the child "could have" been present. The court noted that the petitioner "did not believe his conduct rose to the level of neglect . . . because he did not believe the home was a drug-endangered environment and did not think his judgement or caretaking was impaired." The court concluded that "[the petitioner's] substance abuse harmed and threatened [the child's] health, safety, and welfare, as it exposed the child to drug abuse and a drug-endangered environment." Accordingly, the court adjudicated the petitioner as a neglectful parent and N.S. as a neglected child.

The circuit court held a dispositional hearing in August 2024. Prior to the hearing, the petitioner filed a motion to continue (or, alternatively, for the court to hold its ruling in abeyance) pending the outcome of a bond reduction hearing related to his felony criminal charges. The petitioner also moved for a post-adjudicatory improvement period "in anticipation of his release from incarceration soon or in the near future" or that he be granted a "Disposition 5." At the hearing, the DHS and the guardian objected to the various requests in the petitioner's motion, "noting [the petitioner's] pending felony criminal proceedings, the child's tender years, and the speculative nature of [the petitioner's] release on bond." The court denied the petitioner's motion to continue "based upon . . . the proffer of counsel" and proceeded to disposition, hearing testimony from the petitioner and a CPS worker.

In its subsequent dispositional order, the court concluded that "[the petitioner] was wholly absent from [the] case from its inception until his incarceration," having to be served by publication despite his counsel's commendable efforts to contact him. The court found that the CPS worker initially looked into services for the petitioner but could not provide them due to his absence. The petitioner only began participating in hearings after his incarceration, which rendered him unable to participate in services. The court further found that since being incarcerated, the petitioner had not attempted to contact the DHS about the child or the case and had not "provided the child with any cards, gifts, letters, or money" despite having funds available in his commissary account. Noting that the petitioner's adjudication was based on his "significant substance abuse problem,"

---

[4] The petitioner was charged with violations of West Virginia Code § 60A-4-401(a)(i) (delivery of a controlled substance—fentanyl) and West Virginia Code § 61-11-6(b) (accessory after the fact to murder), among other things. In April 2024, the petitioner pled guilty to possession of a controlled substance without a prescription (a misdemeanor in violation of West Virginia Code § 60A-4-401(c)) and was sentenced to 120 days of incarceration.

the court also found that there "was no information before [it]" to indicate that the petitioner had addressed this issue and that his eventual "incarceration, in and of itself, [was] no guarantee of [his] sobriety or rehabilitation." For these reasons, the court concluded that the petitioner failed to demonstrate that he was likely to participate in a post-adjudicatory improvement period. The court also concluded that the petitioner had not corrected (nor taken any meaningful steps to correct) the issues for which he was adjudicated. Consequently, there was no reasonable likelihood that the conditions of neglect could be substantially corrected in the near future. The court further found that termination was necessary for the child's welfare. Having concluded that there was no less restrictive dispositional alternative, the court terminated the petitioner's parental and custodial rights to N.S.[5] It is from this order that the petitioner appeals.

On appeal from a final order in an abuse and neglect proceeding, this Court reviews the circuit court's findings of fact for clear error and its conclusions of law de novo. Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011). Before this Court, the petitioner first asserts that the circuit court erred in denying his motion to continue the dispositional hearing (or to hold its ruling in abeyance) until after his bond reduction hearing. It is in a circuit court's discretion to determine whether a continuance is warranted. *See In re Tiffany Marie S.*, 196 W. Va. 223, 235, 470 S.E.2d 177, 189 (1996) ("Whether a party should be granted a continuance for fairness reasons is a matter left to the discretion of the circuit court, and a reviewing court plays a limited and restricted role in overseeing the circuit court's exercise of that discretion."). We have further explained that "abuse can be found in the denial of a continuance only when it can be seen as 'an unreasoning and arbitrary insistence upon expeditiousness in the face of a justifiable request for delay[.]'" *Id.* at 236, 470 S.E.2d at 190 (quoting *Morris v. Slappy*, 461 U.S. 1, 11–12 (citation omitted)). Critically, Rule 5 of the West Virginia Rules of Procedure for Child Abuse and Neglect Proceedings specifically provides that these proceedings should *not* be delayed "pending the initiation, investigation, prosecution, or resolution of . . . criminal proceedings." We therefore find that the circuit court's refusal to continue the hearing or to hold its dispositional ruling in abeyance was neither unreasonable nor arbitrary. Contrary to the plain language of Rule 5, the petitioner requested a delay in the hope that an issue related to his criminal proceedings would be favorably resolved. Accordingly, we find no error.

Next, the petitioner asserts that the circuit court erred in terminating his parental and custodial rights instead of granting him a post-adjudicatory improvement period or utilizing another less severe dispositional alternative, such as a "Disposition 5." *See* W. Va. Code § 49-4-604(c)(5). However, pursuant to W. Va. Code § 49-4-610(2)(B), a parent must "demonstrate, by clear and convincing evidence, that [he] is likely to fully participate" to be eligible for an improvement period, and circuit courts have discretion to deny an improvement period when improvement is unlikely. *See In re Tonjia M.*, 212 W. Va. 443, 448, 573 S.E.2d 354, 359 (2002). Moreover, it is well established that "[t]ermination of parental rights . . . may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood . . . that conditions of neglect or abuse can be substantially corrected." Syl. Pt. 5, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011) (quoting Syl. Pt. 2, *In re R.J.M.*, 164 W. Va.

---

[5] The mother successfully completed an improvement period and was reunified with the child. The permanency plan for the child is therefore to remain in the mother's custody.

496, 266 S.E.2d 114 (1980)). Ample evidence supports the circuit court's finding that the petitioner did not demonstrate that he was likely to participate in an improvement period, and those same facts indicate there was no reasonable likelihood that the conditions of neglect could be substantially corrected in the near future. For example, the record indicates that, even while incarcerated following his conviction on one drug-related charge and awaiting trial on others, the petitioner did not acknowledge that his substance abuse led to his neglect of the child because he denied that his drug use impaired his judgement or subjected the child to a drug-endangered environment. As we have explained, "in order to remedy [an] abuse and/or neglect problem, the parent must recognize and acknowledge that his . . . conduct constituted abuse." *In re Timber M.*, 231 W. Va. 44, 55, 743 S.E.2d 352, 363 (2013). Without such an acknowledgment, the problem is untreatable. *Id.* (quoting *In re Charity H.*, 215 W. Va. 208, 217, 599 S.E.2d 631, 640 (2004)).

Further, the petitioner failed to participate in the case prior to his incarceration. The petitioner argues that he was not personally served until March 2024, implying that he was unaware of the proceedings until he was incarcerated. However, service was achieved by publication in October 2023. In fact, it appears that the petitioner was aware of the DHS's involvement as early as August 2023, before the petition was filed, when he agreed to a safety plan that placed the child with a family member due to his active substance abuse. Although the petitioner argues that it was the DHS who failed to provide him with "any services whatsoever," in reality, the petitioner's inability to participate in services for much of the case was due to his absence. Even after his incarceration, the petitioner did not attempt to contact the DHS or the child despite his ability to do so.[6] Sufficient evidence therefore demonstrates that there was no reasonable likelihood that the petitioner could substantially correct the conditions of abuse and neglect in this case. *See* W. Va. Code § 49-4-604(d) ("'No reasonable likelihood that conditions of neglect or abuse can be substantially corrected' means that, based upon the evidence before the court, the [parent] . . . [has] demonstrated an inadequate capacity to solve the problems of abuse or neglect on [his] own or with help."). The circuit court also found that termination was necessary for the child's welfare.[7] Circuit courts are permitted to terminate a parent's rights upon these findings. *See* W. Va.

---

[6] The petitioner's argument that the court failed to conduct a "*Cecil T.* analysis" is therefore misplaced, as this analysis is required when no factors *other* than incarceration are considered at disposition regarding a parent's ability to correct the conditions of neglect. *See* Syl Pt. 3, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011). Here, the court based its conclusion regarding the petitioner's inability to remedy the conditions of neglect on the petitioner's lack of participation in the case and lack of contact with the child both before *and* after his incarceration and further noted that it was not the petitioner's incarcerated status that later prevented him from contacting the DHS or the child.

[7] The petitioner argues that the court's findings were premature because the child was in a kinship placement and the child's mother was successfully working toward reunification. This does not entitle the petitioner to relief. As this Court has stated, "simply because one parent has been found to be a fit and proper caretaker . . . does not automatically entitle the child's other parent to retain [his] parental rights if [his] conduct has endangered the child and such conditions of abuse and/or neglect are not expected to improve." *In re Emily*, 208 W. Va. 325, 344, 540 S.E.2d 542, 561 (2000).

4

Code § 49-4-604(c)(6). Accordingly, we conclude that the circuit court did not err in terminating the petitioner's parental and custodial rights.

For the foregoing reasons, we find no error in the decision of the circuit court, and its November 4, 2024, order is affirmed.

Affirmed.

**ISSUED**: September 30, 2025

**CONCURRED IN BY**:

Chief Justice William R. Wooton
Justice C. Haley Bunn
Justice Charles S. Trump IV
Justice Thomas H. Ewing
Senior Status Justice John A. Hutchison

5