423 S.E.2d 596

**Paul NESSELROAD, Roger C. Jeffries, other Similarly Situated West Virginia State Teachers and Related Employees, Appellants,**

v.

**Willard ANSEL, Executive Secretary of the State of West Virginia Teachers Retirement Board; State of West Virginia Teachers Retirement Board; State of West Virginia; and Gaston Caperton, Governor of the State of West Virginia, Appellees.**

No. 20846.

Supreme Court of Appeals of West Virginia.

Submitted Sept. 22, 1992.

Decided Oct. 22, 1992.

---

**22.** *Devotions Upon Emergent Occasions,* "Meditation XVII."

Franklin D. Cleckley, Morgantown, and Everette F. Thaxton, Alan M. Drescher, Thaxton & Daniels, Charleston, for appellants.

Mario Palumbo, Atty. Gen., Silas B. Taylor, Sr. Deputy Atty. Gen., Stephen Stockton, Asst. Atty. Gen., Charleston, for appellees.

NEELY, Justice:

This is an appeal from a circuit court order denying the petitioners a writ of mandamus to require the State Teachers Retirement System to calculate appellants' retirement benefits in such a way as to give them credit for prior service for which they had made no contributions to the system. We affirm.

Appellee Willard M. Ansel is the Executive Secretary of the West Virginia Teachers Retirement Board, which oversees the operation of the State Teachers Retirement System (STRS). The appellants are state college and university faculty who initially elected either to participate only partially in the State Teachers Retirement System or elected not to participate at all. The appellants maintain that based upon language incorporated into *W. Va. Code*, 18–23–4a by Chapter 101, *Acts of the Legislature*, Regular Session, 1988 they had a right for approximately one year to elect to join the State Teachers Retirement System and have their pensions calculated based upon their total number of years of service.

The language from Chapter 101 upon which appellants rely is as follows:

"Notwithstanding any provisions contained in article seven-a and article twenty-three of this chapter, once a member has been elected one of the options contained in section fourteen-a, article seven-a of this chapter and this section, he cannot thereafter change such election after June thirtieth, one thousand nine hundred eighty-nine."[1]

However, in the Third Extraordinary Session of the 1988 Legislature, *W. Va. Code*, 18–23–4a was again amended with the following language:

"The Legislature declares that the amendment of this section in Enrolled Committee Substitute for House Bill N. 4672, enacted at the regular session, one thousand nine hundred eighty-eight was inadvertent and remained in said bill contrary to legislative intent that the same be deleted; therefore, such language is hereby retroactively deleted and expunged as of the effective date of said Enrolled Committee Substitute for House Bill No. 4672 as curative and technical corrective action. The Legislature further declares that such ambiguous and deficient language inadvertently enacted in said bill shall be given no force and effect whatsoever in any litigation involving such language."

During the apparent window of opportunity provided by the first amendment to *Code*, 18–23–4a made at the regular session of the legislature in 1988 and quoted earlier, appellants gave notice to STRS that they elected to join. STRS resisted, based upon STRS's interpretation of the second amendment, but on 30 June 1988 Judge Paul Zakaib of the Circuit Court of Kanawha County granted a writ of mandamus requiring STRS to accept the appellants as unlimited participants in STRS *on a prospective basis only*. Judge Zakaib concluded that the legislature's attempted retroactive revocation of the March 12, 1988 amendment to *W. Va. Code*, 18–23–4a could not void appellants' previously "vested"

---

1. Chapter 101, Acts of the Legislature, Regular Session 1988 was passed 12 March 1988, effective from passage and was signed by the Governor.

right to "reselect" a retirement program as provided in the first amendment. However, Judge Zakaib further found that because the unamended *W.Va.Code*, 18–7A–14a [1971] clearly limited back payments to STRS to those made between March 6, 1971 and March 6, 1972, appellants' status as unlimited participants in STRS could be only prospective.[2] Judge Zakaib's order specifically denied appellants the right to make *back payments* to STRS and thereby obtain credit for past years of service. Later, however, appellants brought this new mandamus action in the Circuit Court of Kanawha County, this time before Judge A. Andrew MacQueen, seeking to require STRS to compute appellants' benefits based upon total years of service, and on 8 March 1991 Judge MacQueen denied the writ citing as authority Judge Zakaib's earlier final order.

I.

Historically, participation in STRS is available to two different groups. One group includes teachers and service personnel employed in the elementary and/or secondary school system of West Virginia. The second group includes teachers, administrators and other employees of institutions of higher education. Before 1963, all members of both groups were enrolled in the same retirement system, namely STRS. Their contributions to the system, and their future benefits, however, were limited to their full salary or a statutorily established maximum, whichever was higher. Effective 1 July 1970, the statutory maximum was $4,800. Chapter 47, *Acts of the Legislature, Regular Session*, 1970. The amount contributed by the employee was matched by the employer. *W.Va.Code*, 18–7A–14 [1984] and its predecessors as disclosed in the *Code* references to the *Acts of the Legislature.*

In 1963, when the maximum amount of salary upon which contributions to STRS could be made was $4,800, the West Virginia Legislature provided for a supplemental pension plan, known as Teachers Insurance and Annuity Association/College Retirement Equities Fund (TIAA/CREF) for college and university faculty and employees. College and university faculty and employees who elected to participate in TIAA/CREF made contributions to TIAA/CREF based on that portion of their salaries in excess of $4,800. The contributions made by employees to TIAA/CREF were also matched by the employer. *W.Va. Code*, 18–23–4a [1990] and its predecessors. College and university faculty and employees who participated in both retirement systems were referred to as "split participants."

In 1969, the West Virginia Legislature removed the ceiling on contributions to STRS for higher education employees who did not participate in TIAA/CREF. In 1971, the legislature passed *W.Va.Code*, 18–7A–14a, which provided an opportunity for split participants to choose among three options: (1) participate solely in TIAA/CREF; (2) participate solely in STRS; or (3) continue to participate in both STRS and TIAA/CREF. Those choosing to participate solely in one system could contribute to that system based on their entire salary (hereafter "unlimited participants"), while those choosing to remain split participants were allowed to contribute to STRS to the extent of their first $4,800 in salary and contribute to TIAA/CREF to the extent of all salary above $4,800. *W.Va.Code*, 18–7A–14a [1971].

2. This case is made all the more complicated for the reader who does not specialize in school law because it involves thirty years of peculiar school law history. *W.Va.Code*, 18–7A–14a [1971] was passed in 1971 to allow employees of the old West Virginia Board of Regents (the governing board of *both* the state colleges and state universities at the time) whose participation in STRS had been limited to the first $4,800 of salary (roughly the highest public school teacher salary in the early 1960's) to elect to become full participants and have deductions and benefits based upon the employees' entire salary. *Code*, 18–7A–14a was an extraordinarily time specific statute; it allowed one year for employees with college or university service before 1971 to pay STRS double the amount they would have paid had they been full members of STRS during their prior service. In this way employees of the Board of Regents were permitted to "buy" their prior service and their pensions could be based on full salary for all years. All of this is put in perspective again further on in the text.

*W. Va. Code*, 18–7A–14a [1971] provided that the opportunity to elect to become an unlimited participant in STRS was available only from 6 March 1971 through 6 March 1972. *Code*, 18–7A–14a [1971] also provided that those persons who were formerly limited in the amount they could pay into STRS and who chose to become unlimited participants in STRS before 6 March 1972, could obtain full credit for all prior service on an "unlimited" basis by making back payments into the system to account for payments that would have been made had the electing employees been unlimited participants in the 1960's. Those electing to join on an unlimited basis who wished credit for pre–1971 service were allowed to buy pre–1971 credit by paying double the individual contribution they would have paid had they been unlimited members before 1971 to account for the missing employer contributions. However, once an election was made, it could not be changed. *W. Va. Code*, 18–23–4a [1971]. The appellants chose not to participate fully in STRS but to remain either split participants or entirely TIAA/CREF participants.

In March 1988, the West Virginia Legislature amended *Code*, 18–23–4a to create a second opportunity for higher education employees like the appellants to elect one of the three options. However, the legislature *did not* amend *Code*, 18–7A–14a [1971] to provide for back payments and purchase of prior service credits from those who elected to join STRS as unlimited participants. In April 1988, pursuant to the provisions of the March, 1988 amendment to *Code*, 18–23–4a, appellants elected to become unlimited participants in STRS. Later in 1988, the legislature, through the language quoted earlier from the amendment to *Code*, 18–23–4a enacted in the Third Extraordinary Session, attempted retroactively to revoke the Regular Session amendment to *Code*, 18–23–4a, and it was based upon this attempted retroactive revocation that STRS initially refused to allow appellants to become unlimited participants. Judge Zakaib correctly rectified this STRS decision when he granted the writ of mandamus discussed above on 30 June 1988.

## II.

Computation of annual retirement benefits from STRS is governed by *Code*, 18–7A–26(a) [1981] which, in relevant part, defines a member's annual retirement benefit as the sum of:

"Two percent of the member's average salary multiplied by his total service credit as a teacher. In this paragraph "average salary" shall mean the average of the highest annual salaries received by the member during any five years contained within his last fifteen years of total service credit: *Provided, that the highest annual salary used in this calculation for certain members employed by the West Virginia Board of Regents at institutions of higher education under its control shall be four thousand eight hundred dollars, as provided by section fourteen-a [§ 18–7A–14a] of this article and chapter.*" [emphasis added]

The "certain members employed by the West Virginia Board of Regents at institutions of higher education" refers to split participants.

Pursuant to Judge Zakaib's order, appellees have bifurcated appellants' STRS accounts for purposes of calculating the annual benefit payments due them. For the period before 1988, when appellants were split participants contributing to STRS only on the basis of the first $4,800 of salary, appellees compute the retirement benefit for appellants, in accordance with *W. Va. Code*, 18–7A–26 [1981], as 2 percent of $4,800 multiplied by the total service credit compiled during appellants' status as split participants. For the period since appellants' 1988 election to be unlimited participants in STRS, appellees compute the retirement benefit as 2 percent of the appellants' average salary for the five highest years during the years since the election, multiplied by the appellants' total number of years compiled as full members. These two figures are then added to determine the total retirement benefit payable.

## III.

When we look at the statutory scheme, we conclude that Judge MacQueen was correct in declining to accept the appellants' argument that appellants should be credit-

ed with 2 percent of the average of their highest five years of salary during the last fifteen years of service *for every year* that they have been employed in the college or university systems. First, those persons who were either split participants or entirely TIAA/CREF participants received substantial contributions to their private retirement accounts from the State of West Virginia. If, therefore, the legislature had intended that the appellants be able to obtain credit for service in the system for which payments had not been made to STRS, the legislature certainly would have provided, as it did in 1971, for the "purchase" of prior service credit.

When elementary and secondary teachers return to the public schools after a hiatus in service, if they withdrew their own contributions to STRS at the time of stopping work, they are permitted to buy back prior service upon paying in what they withdrew from the system along with interest.[3] However, it must be remembered that when school teachers leave the system, the state's contribution is not given to the withdrawing teacher—only her own contribution can be withdrawn when she stops work.

In the case before us, the appellants not only paid their own money into TIAA/CREF, but the state paid its retirement contribution into TIAA/CREF, which means that if the legislature had intended that the appellants be allowed to join STRS and receive benefits, the legislature would have *at least* required the appellants to buy the prior years of service by paying twice the employees' contribution plus accrued compound interest. At oral argument in this Court, the appellants were decidedly unenthusiastic about acquiring their prior service credits in this fashion.

Consequently, in light of the legislature's studied silence concerning any mechanism for buying prior credit (unlike the legislature's behavior under similar circumstances in 1971) the appellees were correct in construing the intention of the legislature at the time the legislature enacted the window of opportunity for college and university faculty and employees to make a new election that such election was prospective only. Any other conclusion would be a fiscal and actuarial travesty.

Accordingly, the judgment of the Circuit Court of Kanawha County is affirmed.

Affirmed.

---

**3.** *W.Va.Code*, 18–7A–13 [1986] provides in part: "Any former member of the retirement system who has withdrawn accumulated contributions but subsequently reenters the retirement system shall be permitted to repay to the retirement fund the amount withdrawn, plus interest at a rate of six percent, compounded annually from the date of withdrawal to the date of repayment: Provided, That no such repayment may be made until the former member has completed two years of contributory service after reentry; and such member shall be accorded all the rights to prior service and experience as

were held at the time of withdrawal of such accumulated contributions: Provided, however, That no withdrawn service may be reinstated that has been transferred to another retirement system from which the member is currently or will in the future draw benefits based on the same service."

This allows teachers to buy back years of credit (after two years of renewed service) by paying the amount they withdrew plus six percent interest compounded annually to restore their pension credit.