IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

January 2013 Term

_____

No. 11-1531

_____

**FILED**

May 17, 2013
released at 3:00 p.m.
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

LARRY PATTERSON,
Petitioner

v.

THE BOARD OF EDUCATION OF THE
COUNTY OF RALEIGH,
Respondent

_____

Appeal from the Circuit Court of Kanawha County
The Honorable Paul Zakaib, Jr., Judge
Civil Action No. 09-AA-23

AFFIRMED

_____

Submitted: April 10, 2013
Filed: May 17, 2013

John Everett Roush, Esq.                     Gregory W. Bailey, Esq.
Legal Services                               Howard E. Seufer, Jr., Esq.
West Virginia School Service                 Bowles Rice McDavid Graff & Love LLP
Personnel Association                         Morgantown, West Virginia
Charleston, West Virginia                     Counsel for the Respondent
Counsel for the Petitioner

CHIEF JUSTICE BENJAMIN delivered the Opinion of the Court.

JUSTICE WORKMAN, deeming herself disqualified, did not participate in the decision
in this case.

SYLLABUS BY THE COURT

1.     "The presumption is that a statute is intended to operate prospectively, and not retrospectively, unless it appears by clear, strong and imperative words or by necessary implication, that the Legislature intended to give the statute retroactive force and effect." Syllabus Point 4, *Taylor v. State Compensation Commissioner*, 140 W. Va. 572, 86 S.E.2d 114 (1955).

2.     West Virginia Code § 18A-4-5b (1990), regarding uniformity of salaries, rates of pay, benefits, increments or compensation for all county school service personnel regularly employed and performing like assignments and duties within the county, operates prospectively so that uniformity is not required between a county school service employee who was already employed on the effective date of West Virginia Code § 18A-4-5b in 1984 and an employee who performs like assignments and duties who was employed after the effective date of the statute.

3.     A county school service employee who holds a 210-day regular contract and a 30-day contract to perform related duties during a summer school term does not perform like assignments and duties with a school service employee who holds a 261-day regular contract for the purpose of the uniformity provisions found in W. Va. Code § 18A-4-5b (1990).

Benjamin, Chief Justice:

Petitioner Larry Patterson appeals the October 5, 2011, order of the Circuit Court of Kanawha County that affirmed the decision of the West Virginia Public Employees Grievance Board that denied relief sought by the petitioner in his grievance against Respondent Raleigh County Board of Education.[1] For the reasons that follow, we affirm the circuit court's order.

## I. FACTUAL AND PROCEDURAL BACKGROUND

During the time period in question, Larry Patterson, the petitioner, was employed as a Custodian III by Respondent Board of Education of the County of Raleigh.[2] Specifically, the petitioner was employed under a 210-day regular contract of employment and a 30-day summer contract of employment.[3] The petitioner did not

---

[1] The petitioner was one of a group of similarly situated employees who initiated a grievance. This appeal concerns only the petitioner.

[2] The Grievance Board found in its December 31, 2008, decision that the petitioner had been employed by the respondent for 29 years.

[3] According to the Grievance Board decision,

(continued . . .)

1

receive paid vacation days, but took unpaid days off throughout the year, determined by arrangements made with his supervisors according to the needs of the facility. The petitioner retired from his employment in the summer of 2008.

In July 2007, the petitioner filed a grievance asserting that the respondent violated the uniformity provisions in W. Va. Code § 18A-4-5b[4] and the discrimination

---

Respondent employs most custodians under 210-day contracts, but provides longer terms for those assigned to buildings which are open during the summer months and for specific programs which provide extra funding for custodial services; it also provides optional, separate summer contracts for some. Summer work for custodians varies, depending on needs. However, all custodians perform similar duties at their assigned locations, which include normal cleaning during the school year, and more extensive work during unoccupied periods (such as summer) like stripping and waxing floors, mowing grass, and painting.

[4] W. Va. Code § 18A-4-5b (1990) provides,

The county board of education may establish salary schedules which shall be in excess of the state minimums fixed by this article.

These county schedules shall be uniform throughout the county with regard to any training classification, experience, years of employment, responsibility, duties, pupil participation, pupil enrollment, size of buildings, operation of equipment or other requirements. Further, uniformity shall apply to all salaries, rates of pay, benefits, increments or compensation for all persons regularly employed and performing like assignments and duties within the county:

(continued . . .)

2

prohibition of W. Va. Code § 6C-2-2(d) (2008)[5] by employing a similarly situated Custodian III, Harold French, with a 261-day contract that included paid vacation days. Mr. French began working for the respondent in January 1969 and retired effective June 30, 2008. Mr. French was the only custodian employed by the respondent who held a 261-day contract. The Grievance Board found that no current employees of the respondent hold such a contract.

---

Provided, That in establishing such local salary schedules, no county shall reduce local funds allocated for salaries in effect on the first day of January, one thousand nine hundred ninety, and used in supplementing the state minimum salaries as provided for in this article, unless forced to do so by defeat of a special levy, or a loss in assessed values or events over which it has no control and for which the county board has received approval from the State Board prior to making such reduction.

Counties may provide, in a uniform manner, benefits for service personnel which require an appropriation from local funds including, but not limited to, dental, optical, health and income protection insurance, vacation time and retirement plans excluding the State Teachers' Retirement System. Nothing herein shall prohibit the maintenance nor result in the reduction of any benefits in effect on the first day of January, one thousand nine hundred eighty-four, by any county board of education.

[5] According to W. Va. Code § 6C-2-2(d), "'Discrimination' means any differences in the treatment of similarly situated employees, unless the differences are related to the actual job responsibilities of the employees or are agreed to in writing by the employees."

3

The Level I hearing examiner determined that Mr. French could not be considered when applying the uniformity requirements because he was hired before the effective date of W. Va. Code § 18A-4-5b, which was July 1, 1984. The examiner concluded therefore that there was no basis for a claim of discrimination or favoritism resulting from the lack of uniformity.

A Level II mediation session was unsuccessful. At Level III, after a hearing, the West Virginia Public Employees Grievance Board found that the petitioner established by a preponderance of the evidence that he performed like assignments and duties as compared to Mr. French, but was given a shorter contract term with no vacation, resulting in violations of W. Va. Code § 18A-4-5b and W. Va. Code § 6C-2-2(d). However, the Board denied both back pay and prospective relief to the petitioner. The Board found that because the petitioner accepted his contract for numerous years, back pay was not appropriate in this case. In addition, the Board found that the petitioner was not entitled to a 261-day contract because the discrimination and uniformity violations ceased with Mr. French's retirement on June 30, 2008.

In its order reviewing the Grievance Board's decision, the circuit court affirmed the denial of relief but for different reasons. Specifically, the circuit court found that the petitioner's lack of uniformity claim failed for two reasons. First, the court found that Mr. French is not subject to comparison under the uniformity requirements of W. Va.

Code § 18A-4-5b because he was hired before the effective date of that statute. Second, the circuit court found that an award of back pay based upon a lack of uniformity claim does not arise from a comparison of an employee holding a 261-day regular contract with a 210-day regular contract.

The petitioner now appeals the circuit court's order to this Court. On appeal, the petitioner seeks only lost wages and benefits for the 2007 – 2008 school year which is the school year after which the petitioner initiated his grievance and the last school year before which Mr. French retired.

## II.  STANDARD OF REVIEW

With regard to this Court's review of cases like the instant one, we previously have explained,

> The standard of review for Grievance Board determinations has been explained as follows in syllabus point one of *Cahill v. Mercer County Board of Education*, 208 W. Va. 177, 539 S.E.2d 437 (2000):
>
>> Grievance rulings involve a combination of both deferential and plenary review. Since a reviewing court is obligated to give deference to factual findings rendered by an administrative law judge, a circuit court is not permitted to substitute its judgment for that of the hearing examiner with regard to factual determinations. Credibility determinations made by an

administrative law judge are similarly entitled to deference. Plenary review is conducted as to the conclusions of law and application of law to the facts, which are reviewed de novo.

*See also Martin v. Randolph County Bd. of Educ.*, 195 W. Va. 297, 304, 465 S.E.2d 399, 406 (1995) (holding that "[w]e must uphold any of the ALJ's factual findings that are supported by substantial evidence, and we owe substantial deference to inferences drawn from these facts"). In syllabus point one of *Randolph County Board of Education v. Scalia*, 182 W. Va. 289, 387 S.E.2d 524 (1989), this Court explained: "A final order of the hearing examiner for the West Virginia Educational Employees Grievance Board, made pursuant to W. Va. Code, 18-29-1, *et seq.* (1985), and based upon findings of fact, should not be reversed unless clearly wrong."

*Durig v. Board of Educ. of County of Wetzel*, 215 W. Va. 244, 247, 599 S.E.2d 667, 670 (2004). In the case before us, we are asked to review the circuit court's application of the law to the facts. Therefore, our standard of review is *de novo*.

## III.  DISCUSSION

### A.  Prospective Operation of W. Va. Code § 18A-4-5B

The dispositive issue in this case is whether the circuit court erred in holding that the petitioner failed to establish a right of uniformity with Mr. French. The first basis for the circuit court's ruling was its determination that the uniformity requirements of W. Va. Code § 18A-4-5b apply in a prospective manner only. In making

6

this determination, the circuit court relied on this Court's opinion in *Crock v. Harrison County Bd. of Educ.,* 211 W. Va. 40, 560 S.E.2d 515 (2002).

In *Crock*, Appellant Shirley Crock, who was employed in 1998 as an Aide II by the Harrison County School Board, filed a grievance against the school board pursuant to W. Va. Code § 18A-4-5b alleging a uniformity violation. Ms. Crock asserted that the board of education violated the uniformity provision by employing Grace Washington as an Aide II and granting her an experience credit while denying Ms. Crock such a credit. Ms. Washington had been employed by the board of education as an Aide II since 1979. The ALJ ruled that the uniformity provision required granting an experience credit to Ms. Crock, and the Grievance Board and the circuit court affirmed the ruling.

In response to the decision regarding Ms. Crock, the board of education terminated the employment contracts of both Ms. Washington and Ms. Crock and issued new contracts that excluded their respective experience credits. Ms. Washington and Ms. Crock were advised that the purpose of this change was to maintain uniformity in salary schedules paid to aides. Ms. Washington and Ms. Crock initiated a joint grievance contesting the termination of their employment contracts and the issuance of new contracts. The ALJ, Grievance Board, and the circuit court all ruled against Ms. Washington and Ms. Crock, and they appealed to this Court.

7

This Court reversed the decision of the circuit court on the basis of language in W. Va. Code § 18A-4-5b which provides that "[n]othing herein shall prohibit the maintenance nor result in the reduction of any benefits in effect on the first day of January, one thousand nine hundred eighty-four, by any county board of education." In doing so, this Court explained:

> Clearly, this provision resolves the issue of whether Mrs. Washington's experience credit could have been eliminated in the manner undertaken by the Board. Since Mrs. Washington was granted the benefit of the experience credit in 1979, six years before the enactment of West Virginia Code § 18A-4-5b, there is no question that she is subject to the grandfather clause of that provision. The intent of the Legislature to implement the uniformity provisions in a prospective fashion is clear. Accordingly, the uniformity provisions enacted in 1984, that apply to the paying of salary and benefits to personnel who are employed in similar position within the county, do not affect Mrs. Washington. Thus, the Board was without authority to remove the experience credit from Ms. Washington's contract under the guise of the uniformity provision of West Virginia Code § 18A-4-5b.

*Crock*, 211 W. Va. at 45, 560 S.E.2d at 520.

The petitioner in the instant case asserts that the circuit court's reliance on *Crock* is misplaced. According to the petitioner, the significance of *Crock* is the fact that the Court permitted the employee hired after the enactment of W. Va. Code § 18B-4-5b to keep the same benefits as the employee hired before the enactment of the statute. The petitioner opines that the language of W. Va. Code §18A-4-5b does not provide that uniformity need not be maintained between employees hired prior to the enactment of the

statute and those hired after. The petitioner contends that the purpose of the statute is to guarantee uniformity in the treatment of county school board employees, and to read the language of the statute to create two unequal classes of employees would be "perverse."

We reject the petitioner's position. This Court's language in *Crock* is consistent with our law regarding whether a statute operates prospectively or retroactively. Under our law, "[t]he presumption is that a statute is intended to operate prospectively, and not retrospectively, unless it appears, by clear, strong and imperative words or by necessary implication, that the Legislature intended to give the statute retroactive force and effect." Syllabus Point 4, *Taylor v. State Compensation Commissioner*, 140 W. Va. 572, 86 S.E.2d 114 (1955).

When we apply this rule to the statute at issue, we are compelled to conclude that the statute operates prospectively. The statute does not contain clear, strong, and imperative words that rebut the presumption that it operates prospectively. In addition, nothing in the statute necessarily implies that the Legislature intended the statute to operate retroactively. To the contrary, the fact that the statute provides that any benefits of those persons employed on the effective date of the statute are not to be reduced to achieve uniformity indicates the Legislature's intent that the statute apply prospectively. Further, there is nothing "perverse" about the statute's prospective application. It is within the Legislature's authority to enact a statute that alters the

9

benefits, working conditions, or salaries of government employees who are employed after the statute's effective date. Consequently, it is not uncommon for otherwise similarly situated government employees to be governed by different statutes and therefore subject to different benefits, working conditions, and salaries.[6]

Therefore, based on this Court's reasoning in *Crock* and the application of our law on the prospective and retroactive operation of statutes, we now hold that West Virginia § 18A-4-5b (1990), regarding uniformity of salaries, rates of pay, benefits, increments or compensation for all county school service personnel regularly employed and performing like assignments and duties within the county, operates prospectively so that uniformity is not required between a county school service employee who was already employed on the effective date of West Virginia Code § 18A-4-5b in 1984 and an employee who performs like assignments and duties who was employed after the effective date of the statute.

---

[6] In support of his argument, the petitioner cites this Court's memorandum decision in *Dillard v. Board of Education of the County of Raleigh*, No. 101221, wherein this Court granted back pay to a grievant for the 2007 – 2008 school year who was similarly situated to the petitioner and who also initiated a uniformity claim based on Mr. French's 261-day contract. However, in *Dillard* this Court did not consider the issue which is present in the instant case. Therefore, this Court does not find *Dillard* instructive to our decision in the instant case.

## B. Uniformity between 210-Day Contract and 261-Day Contract

The second reason for the circuit court's denial of the relief sought by the petitioner was the court's conclusion that a uniformity claim cannot be based on a comparison of an employee holding a 261-day regular contract with an employee holding a 210-day regular contract. The circuit court explained its reasoning as follows:

> It is only when the sole distinction between 240-day contract and 261-day contract employees involves paid vacation that the [Supreme] Court has afforded relief. Syllabus Point 5 of [*Board of Educ. of County of Wood v.*] *Airhart*[, 212 W. Va. 175, 569 S.E.2d 422 (2002)] provides:
>
>> Where county board of education employees perform substantially similar work under 261-day and 240-day contracts, and vacation days provided to 261-day employees reduce their annual number of work days to [a] level at or near the 240-day employees, principles of uniformity demand that the similarly situated employees receive similar benefits.
>
> The Petitioner's 210-day contract does not establish the profile required to establish a uniformity claim. . . . Assignments that are unlike [sic], by virtue of materially different amounts of work to be performed under the regular employment contracts (210 contract days compared with 240 contract days), are not subject to uniformity requirements.
>
> Petitioner held summer employment. Summer employment is separate and distinct from regular employment and is governed by West Virginia Code § 18-5-39 that provides, in part:

11

>        (a)   Inasmuch as the present county school
> facilities for the most part lie dormant and
> unused during the summer months, and
> inasmuch as there are many students who are in
> need of remedial instruction and others who
> desire accelerated instruction, it is the purpose
> of this section to provide for the establishment
> of a summer school program, *which is to be
> separate and apart from the full school term as
> established by each county.* (emphasis
> supplied).
>
>        There is no legal basis to combine the number of days
> with a school service employee's regular contract and the
> period of summer employment to achieve a comparison with
> another school service employee holding a regular contract
> term in excess of 200 days. . . . The summer employment of
> school service personnel is related to support for summer
> programs and are, therefore, different than regular
> employment.

This Court finds that the circuit court conducted the proper analysis of this issue and reached the correct conclusion. The basis of this Court's holding in *Airhart* was that the only difference between the school service employee holding a 261-day contract and the employee holding a 240-day contract was the number of paid vacation days provided to the employee with the 261-day contract. In contrast, the petitioner held a 210-day regular contract while Mr. French held a 261-day regular contract. When Mr. French's vacation days were deducted from the 261 days, he worked approximately 240 days during the regular school session which is approximately 30 more days than the petitioner worked during the regular school session. As a result, this Court cannot

12

conclude that the petitioner and Mr. French performed like assignments and duties during the regular school year.

Further, there is a difference between a county school service employee's contract for the regular school year and a contract to work during a summer term. Specifically, a contract for the regular school year continues from year to year whereas a contract to work during the summer term may not. West Virginia Code § 18-5-39(f) (2000) provides, in part, that "[a]n employee who was employed in any service personnel job or position during the previous summer shall have the option of retaining the job or position *if the job or position exists during any succeeding summer*." (Emphasis added). Considering the differences between a contract for a regular school year and contract for summer school, this Court cannot conclude that the petitioner was "regularly employed and perform[ed] like assignments and duties" as Mr. French pursuant to West Virginia Code § 18A-4-5b.

Therefore, based on the above, we now hold that a county school service employee who holds a 210-day regular contract and a 30-day contract to perform related duties during a summer school term does not perform like assignments and duties with a

13

school service employee who holds a 261-day regular contract for the purpose of the uniformity provisions found in W. Va. Code § 18A-4-5b (1990).[7]

## IV.  CONCLUSION

Accordingly, this Court affirms the October 5, 2011, order of the Circuit Court of Kanawha County that denied relief to the petitioner based on the uniformity provisions in West Virginia Code § 18A-4-5b.

Affirmed.

---

[7] The petitioner also argues that he is entitled to compensation for lost wages and benefits for the 2007 – 2008 school year.  Having determined that the petitioner failed to state a cognizable uniformity claim pursuant to West Virginia Code § 18A-4-5b, we find it unnecessary to address this assignment of error.